# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUBEN R. CRAIG III,<br><br>Plaintiff,<br><br>v.<br><br>HARPER, *et al.*,<br><br>Defendants. | CIVIL ACTION NO. 3:26-cv-00992<br><br>(SAPORITO, J.) |

## ORDER

After the Court screened plaintiff Ruben Craig's complaint and dismissed several of his claims (Docs. 6, 7), defendants have moved to dismiss the complaint in its entirety (Doc. 11). For the following reasons, defendants' motion will be denied, and the case will proceed to discovery on Craig's remaining claims.

In brief, the claims in this case[1] relate to Craig's allegations that prison officers at SCI-Benner Township and SCI-Smithfield interfered with his legal mail in retaliation for complaints about his conditions of confinement. Craig has been permitted to proceed on First Amendment claims of interference with legal mail against defendants Miller,

---

[1] A series of claims involving alleged restrictions on Craig's religious practice were severed into a separate action.

Gladfelter, and Glassmyer, and First Amendment retaliation claims against defendants Harper, Miller, and Adams.

Defendants argue that Craig has failed to state any viable claim for relief. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the parties made further factual allegations in briefing this motion, those are not considered. *See Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

## I. LEGAL MAIL CLAIMS

First, defendants seek dismissal of Craig's claims of interference with legal mail. As relevant here, Craig alleges that (1) defendants Miller and Gladfelter, of SCI-Smithfield, repeatedly confiscated or tampered

with his "cash slips" and (2) defendant Grassmyer, a mailroom supervisor, deliberately overcharged him for postage. *See* (Doc. 6 at 8-9).

Defendants claim that "the Court already determined that Plaintiff failed to establish a 'pattern of practice' of interference with his mail" (Doc. 13 at 6), but this argument misconstrues the screening memorandum. The Court found that Craig's allegations of "two delayed mailings from [SCI-]Benner" did not constitute a pattern or practice and therefore dismissed any claims of mail interference against the defendants from that prison. *See* (Doc. 6 at 6-7, 15). However, Craig plainly alleged a separate pattern or practice of interference with cash slips at SCI-Smithfield by Miller and Gladfelter. For example, Craig alleged that Miller, "as the guard who sorts the mail arriving on [Craig's] unit," said that he would "do whatever is in his power to prevent [Craig] from getting signed Cash Slips."[2] (Doc. 1, ¶ 277). The complaint plausibly suggested that this practice of interference was endorsed by Gladfelter.

[2] As Craig explains it, this dispute turned on whether he would be permitted to retain signed cash slips in case he needed to prove the date that a document was mailed for purposes of the prison mailbox rule. *See generally* (Doc. 1, ¶¶ 249-297). At this stage, we have not yet resolved whether prison officials' refusal to grant this request would necessarily amount to unconstitutional interference with legal mail.

*See* (*id.*, ¶ 291).

With respect to the claim that Grassmyer overcharged him for postage, defendants argue that "[a]n inmate does not have the right to unlimited free postage," but Craig has not asserted any such right. Rather, he alleges that "mailroom staff" under Grassmyer's command "improperly treated [Craig's] envelopes as overweight mailings." (Doc. 6 at 9) (quoting Doc. 1, ¶ 302). The complaint supported a plausible inference that Grassmyer's staff was deliberately charging Craig for "extra postage" rather than "the standard postage" normally applicable to these mailings. *See* (Doc. 1, ¶¶ 298-303).

Defendants argue that as a matter of law, Craig "does not have a constitutional right not to be 'overcharged'." Without prejudice to further review on a full record, we disagree. A policy in which prison officials condition the processing of Craig's outgoing legal mail on the deliberate imposition of arbitrary or spurious charges could be unconstitutional. At minimum, such a policy would appear to burden Craig's First Amendment rights, and prison officials would have to establish by evidence that it was reasonably related to legitimate penological interests. *See, e.g.*, *Jones v. Brown*, 461 F.3d 353, 360 (3d Cir. 2006) (citing

*Turner v. Safley*, 482 U.S. 78 (1987)). Therefore, this argument is not a basis for dismissal at the pleading stage.

## II. Retaliation Claims

Next, defendants seek dismissal of the retaliation claims against Harper, Miller, and Adams. As explained in the screening memorandum, the basis for those claims is as follows:

- **Harper:** On April 22, 2025, Craig allegedly filed a prison grievance objecting to the fact that he had been assigned to a job in the kitchen; on April 25, Harper allegedly "order[ed Craig's] confinement" in the Restricted Housing Unit pending an "investigation" for an unspecified purpose. On May 1, Craig was taken to Harper's office, where Harper allegedly told him: "You're being transferred [to another prison]. You overstayed your welcome here . . . we're tired of you and your grievances." *See* (Doc. 6 at 2-3).
- **Miller:** Miller allegedly interfered with Craig's cash slips in the manner described above and allegedly admitted that he sought authorization to "deface" Craig's cash slips because he was "displeased" with Craig's related grievance. (*Id.* at 8).

- **Adams**: Between August and October 2025, Craig was allegedly denied access to the law library on four occasions despite having apparent authorization to use the library; after one such denial, Craig asked why he was being refused access, and Adams allegedly "stated that it was . . . 'because [you] are a d*ckhead who likes to file grievances and quote policy.'" (*Id.* at 9-10).

First, defendants seek dismissal because Craig did not allege that he "fil[ed] a grievance against" any of these defendants. As relevant here, a retaliation plaintiff must plausibly allege that the prison grievance or other protected conduct was a "substantial or motivating factor" in the defendant's decision to take an adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)). There is no *per se* requirement for a plaintiff to allege that the defendant was personally named in a grievance; the inference of a retaliatory motive can be supported by other facts. *See*, *e.g.*, *Carrington v. Mosser*, No. 3:25-CV-2293, 2026 WL 3168507, at *5 (M.D. Pa. Oct. 22, 2026). Here, each defendant is alleged to have directly attributed their own actions to Craig's prior grievance(s). These allegations — which are

entitled to the presumption of truth at the pleading stage — suggest a retaliatory motive.

Defendants' remaining arguments as to the individual claims are without merit. Turning first to Harper, they seek dismissal because Craig "simply states that Harper authored an order for [Craig's] confinement" and "does not assert that Harper was the sole and only person who acted in Plaintiff's RHU placement." There is no requirement that a defendant in a retaliation claim must be the "sole and only person" responsible for the adverse action. The complaint suggests that Harper was personally involved in the placement and that Craig's prison grievance was a "substantial and motivating factor" in his actions, which is all that is required at the pleading stage. *See Wisniewski*, 857 F.3d at 156.

With respect to Miller, defendants argue that his alleged alteration of cash slips "can only best be described as *de minimis*" and is not an adverse action sufficient to support a retaliation claim. They identify no authority explaining why these specific actions qualify as *de minimis*.[3]

[3] Defendants argue that Craig "was not deterred as a person of ordinary firmness" because he was ultimately able to send legal mail. How Craig ultimately reacted is irrelevant, because there is no basis to support the assumption that he is "a person of ordinary firmness." *See*
*(continued on next page)*

Regardless, Miller's alleged involvement indicates an ongoing policy of interference, not just isolated instances. *See* (Doc. 1, ¶¶ 288-292). A pattern or practice of interference with legal mail can plausibly suggest an adverse action sufficient to sustain a retaliation claim. *See*, *e.g.*, *Timmons v. Walters*, No. 1:20-CV-02393, 2023 WL 8720670, at *8 (M.D. Pa. Dec. 18, 2023); *Duran v. Merline*, No. CIV.A. 07-3589 RMB, 2008 WL 9846824, at *10 (D.N.J. Mar. 11, 2008).

Finally, as to Adams, defendants argue that Craig "fails to show how being denied access to the law library on only three times resulted in unreasonableness." Given Craig's allegations that these denials occurred during times when he "had a verified [court] deadline," and that this was part of a practice by Adams to deny Craig's library access "every time that he was able," *see* (Doc. 1, ¶¶ 229-235), the complaint plausibly suggests that Adams's actions would deter a person of ordinary firmness.[4]

---

*Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (whether an act would deter a "person of ordinary firmness" is "an objective inquiry and ultimately a question of fact").

[4] Defendants' argument appears to be premised on the assumption that diminished access to the law library must constitute a denial of

*(continued on next page)*

## III. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss (Doc. 11) is **DENIED**.

2. Defendants are **ORDERED** to answer the complaint within 14 days of this order. *See* Fed. R. Civ. P. 12(a)(4).

3. Discovery must be completed by **February 9, 2027**.

4. Dispositive motions must be filed by **March 9, 2027**.

Dated: November 12, 2026

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge

---

access to the courts to support a retaliation claim. *See* (Doc. 13 at 9-10). Although the library limitations must create some "meaningful prejudice" to the plaintiff, *see Williams v. Nyberg*, No. 1:20-CV-00208-SPB, 2023 WL 4628378, at *5 (W.D. Pa. May 10, 2023) (listing cases), they do not need to rise to the level of a separate constitutional violation. *See Jackson v. Eason*, No. 25-CV-1148, 2026 WL 1471515, at *13-15 (E.D. Pa. May 26, 2026); *Diaz-Cruz v. Symons*, No. 1:11-CV-1302, 2016 WL 6248025, at *15 (M.D. Pa. Oct. 26, 2016) ("[T]he adverse act alone does not have to be violative of the Constitution because section 1983 permits suits based on adverse action taken against an individual in response to a constitutionally protected activity.") (citing *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000)).